UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAY TYLER ROSEWALL,

       Plaintiff,                            Case No. 2:17-cv-116

v.                                               HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

       Defendants.
_____/

## **OPINION**

In December of 2013, plaintiff Jay Tyler Rosewell filed an application for disability and disability insurance benefits. (PageID.174-175). Plaintiff alleges that he became disabled on November 1, 2012, due to chronic back issues and surgeries involving a ruptured disc and damaged discs which cause debilitating pain. Plaintiff's last date of insured was December 31, 2012. (ECF 8-2, PageID.53). Plaintiff's application was denied initially and plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). (PageID.114-122, 132-133). ALJ Patricia S. McKay held a hearing on March 30, 2016. Plaintiff, represented by counsel, testified at the hearing. Vocational expert Michael E. Rosko also testified.

Plaintiff testified that he was 43 years old at the time of the hearing. Plaintiff lives with his wife and two daughters in Champion, Michigan. (PageID.73). Plaintiff moved to a one story house because he was having trouble with stairs. (PageID.73-74). Plaintiff has a high school education and last worked as a pipefitter until about 2011. (PageID.74). Plaintiff also worked with a paving company as a flagman and density checker, as a truck driver for several different

employers, for a research and development company which invented a plow harness for snow plows, and as a car salesman. (PageID.75-76, 80-81).

Plaintiff explains that he became disabled on November 1, 2012. At that time, Plaintiff's wife quit work to take care of their adopted twin daughters born three months premature with problems associated with their birth mother's drug addiction. Plaintiff explains that he was unable to take care of the children and his only option was to apply for social security benefits. (PageID.86).

Plaintiff suffers with back problems and has had five surgical procedures including two lumbar fusions and three lumbar laminectomies. (PageID.87). Plaintiff was doing well until his last accident. (PageID.88). Plaintiff has experienced some depression and received treatment for depression after attempting suicide. *Id*. Plaintiff takes Celexa as needed. (PageID.89). Plaintiff is unable to play baseball, fish, play basketball, use a snowblower, chop wood, and bear or deer hunt at camp. (PageID.90).

Plaintiff explained that when he gets up in the morning he first rolls to his knees and stretches before standing. He would walk a little before trying to go down the stairs at his old house. After drinking coffee and stretching more, he watches television and walks around the house. (PageID.91). Plaintiff can drive to his doctor's appointments fifteen minutes away but his wife drives longer distances. *Id*. Plaintiff is able to wash and brush his teeth. (PageID.92). Plaintiff's sister watches the kids while his wife works. *Id*. Plaintiff has a walking stick, but uses it very little. (PageID.94).

Plaintiff experiences consistent pain in his lower back and groin preventing him from standing or sitting for too long. *Id*. Plaintiff can stand for about a half hour, but only a couple

minutes in one spot. (PageID.95). Plaintiff has had rhizotomies to cauterize nerve endings and injections for pain. (PageID.96). Plaintiff uses a TENS unit on occasion. *Id*.

The vocational expert testified that a hypothetical individual who could perform light duty work, occasionally climb stairs or ladders, crouch, crawl, kneel, stoop, or bend, with accommodations to stand, sit, or change positions, in a low stress self-paced setting would not be able to perform plaintiff's past relevant work, but could perform jobs such as assembler (1,000 jobs in Michigan and 15,000 jobs nationally), packager (800 jobs in Michigan and 13,000 jobs nationally), sorter (300 jobs in Michigan and 6,000 jobs nationally), and in product processing and finishing (600 jobs in Michigan and 9,000 jobs nationally). (PageID.102-105). If the same hypothetical individual could perform only sedentary work that individual could perform jobs such as assembler (1000 jobs in Michigan and 15, 000 jobs nationally), in product processing and finishing (600 jobs in Michigan and 9,000 jobs nationally), sorter (300 jobs in Michigan and 6,000 jobs nationally), in security (800 jobs in Michigan and 25,000 jobs nationally), and as a parking cashier (1000 jobs in Michigan and 25,000 jobs nationally). (PageID.105-106).

The vocational expert testified that an individual needs to be on task ninety percent of the time to maintain a job. If an individual is off task twenty percent of the time employment would not be available to that person. (PageID.106-107). The vocational expert testified that it was unlikely that Plaintiff could be placed into employment due to his background and level of discomfort as described by his testimony during the hearing. (PageID.107-108).

The ALJ found that plaintiff could perform jobs that existed in significant numbers in the national economy given plaintiff's residual functional capacity (RFC) and therefore concluded that plaintiff was not under a "disability" under the Social Security Act (20 C.F.R. § 404.1520(g)). The ALJ's decision became the agency's final decision when the Appeals Council

denied plaintiff's request for review. Plaintiff now seeks judicial review of the agency's final decision denying his request for disability benefits.

"[R]eview of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine whether the claimant is disabled as defined by the Social Security Act. See 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At step one, the

ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, after considering the claimant's residual functional capacity, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines plaintiff is not disabled under any step, the analysis ceases and plaintiff is declared as such. 20 C.F.R § 404.1520(a). If the ALJ can make a dispositive finding at any point in the review, no further finding is required. 20 C.F.R. § 404.1520(a).

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id*.

The ALJ found that although Plaintiff could not perform his past relevant work, he could perform sedentary work with some limitations. The ALJ found that Plaintiff could perform a significant number of jobs in the national economy. The ALJ concluded that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: occasional climbing stairs and ladders,

crouching, crawling, kneeling, stooping and bending; having the opportunity to alternate between sitting and standing while working; and low stress work, which is work that is self-paced and not at a production rate.

(PageID.56). The ALJ concluded that Plaintiff had the residual functional capacity to perform sedentary work with limitations that allowed him to work in occupations that included assembly (1,000 jobs in Michigan and 15,000 jobs nationally), product finishing (600 jobs in Michigan and 9,000 jobs nationally), sorting (300 jobs in Michigan and 6,000 jobs nationally), lobby attendant/ gate attendant/ security monitor (800 jobs in Michigan and 25,000 jobs nationally), and parking facility cashier (1,000 jobs in Michigan and 25,000 jobs nationally).

Plaintiff argues that the ALJ erred in making the RFC assessment by not giving weight to Dr. Ots' opinion supporting plaintiff's disability claim and by failing to fully develop the record. The ALJ concluded in part:

> The claimant's overarching allegations of disability are not entirely consistent with the evidence, for a variety of reasons. At the hearing, the claimant explained that the alleged onset date of November 1, 2012 was the date his wife stopped working and was not in any way related to his disability (Hearing Testimony). In addition, while the claimant testified that he could sit for only ten minutes and stand for thirty minutes during the period at issue, the medical evidence documents the claimant was able to walk without difficulty and showed no significant weakness of the lower extremities (2F/6; 3F/9). Moreover, the claimant's conservative treatment suggests that his impairments were not as severe as he alleged during the period at issue. While the record documents the claimant took prescription medication, underwent injections and had multiple rhizotomy procedures, there is no evidence of additional treatment for his physical impairments during the period of adjudication, including physical therapy, use of a TENS Unit or additional surgery (IF/1-3, 11-12; 2F/6; 6F/4-9). For example, on January 18, 2013, which was after the period of adjudication, Dr. Ots noted the claimant may need to have a decompression and fusion at L3 to L4 but stated he "would like to defer this as long as possible" (3F/6).
>
> The undersigned has also considered the claimant's work history, as required by 20 CFR 404.1529. The record documents the claimant

had no earnings in seven of the past fifteen relevant years (9D). This evidence suggests that the claimant's unemployment was related to reasons other than his impairments.

As for the opinion evidence, on January 31, 2014, Dr. Ots opined that he would support the claimant's social security disability application (3F/3). The undersigned has considered the opinion of Dr. Ots, and affords it no weight, as it was prepared beyond the relevant period of adjudication and does not provide for specific workplace limitations and abilities. Moreover, his statement encroaches upon an issue reserved to the Commissioner. Accordingly, the undersigned affords the opinion of Dr. Ots no weight.

The record contains a residual functional capacity opinion crafted by Jennifer Thompson, a State agency Single Decision Maker (SDM). (lA). The undersigned gives no weight to this residual functional capacity opinion because it is agency policy that findings made by SDMs are not opinion evidence that Administrative Law Judges should consider and address in their opinion (See, for example, POMS DI 24510.0S0C, which states that SDM-completed forms are not opinion evidence at the appeal levels. SDM findings are not "medical opinion" evidence since they do not come from medical sources. However, agency policy is that they are also not the opinions of non-medical sources as described in SSR 06-3p).

In sum, as discussed above, the objective medical records, medical opinions, as well as the subjective complaints of the claimant support the residual functional capacity outlined above for the period at issue. Although the medical evidence of record confirms the claimant's diagnoses, the conditions produced no greater restrictions than those identified and were managed with conservative treatment. Therefore, the claimant was able to sustain work as described above.

(ECF No. 8-2, PageID.58-59).

Plaintiff first argues that the RFC determination is not supported by substantial evidence in the record. In determining a person's RFC, an ALJ should assess the person's "ability to do sustained work-related physical and mental activities in a work setting" for eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8p. An impairment is severe for purposes of an RFC determination when it is a "'medically determinable' physical or mental

7

impairment or a combination of impairments that significantly limit(s) an individual's physical or mental ability to perform basic work activities." *White v. Colvin*, No. 14-CV-12870, 2015 WL 5210243, at *6 (E.D. Mich. Sept. 3, 2015) (citing 20 C.F.R. §§ 416.920(a)(4)(ii) and 416.920(c)). The regulations state that basic work activities include:

> 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handline; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers, and usual work situations; and 6) dealing with changes in a routine work setting.

*White*, 2015 WL 5210243, at *6 (citing 20 C.F.R. § 416.921(b)). Notably, an RFC is not the least a person can do, but the most a person can do despite his limitations or restrictions. SSR 96-8p. Plaintiff bears the burden of providing the medical evidence showing the severity of his conditions. *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

In making an RFC finding, "[i]t is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians." *Brown v. Comm'r of Soc. Sec.*, No. 1:14-CV-236, 2015 WL 1431521, *7 (W.D. Mich. Mar. 27, 2015) (citing *Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006)); *see Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). However, the ALJ is not required to base his or her RFC findings entirely on a physician's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013) (quoting SSR-96-5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"); *Poe v. Comm'r of Soc. Sec.*, 342

Fed. App'x 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."). Ultimately, the ALJ may base her RFC finding on *all* relevant evidence on record, including an individual's medical history, reports of daily activity, and recorded observations, for example. SSR 96-8p, 1996 WL 374184, at *5. The "ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and nonmedical evidence." *Rudd*, 531 Fed. App'x at 728.

Plaintiff argues that the ALJ erred by failing to afford weight to Dr. Ots' opinion to support his disability claim. Under the regulations, an ALJ must weigh all medical opinions regardless of its source. 20 C.F.R. § 1527(c). The following factors should be considered when determining what weight to afford a medical opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 1527(c)).

An ALJ affords a treating physician's opinion controlling weight when the evidence and findings are consistent with the other substantial evidence on record. 20 C.F.R. § 1527(c)(2); *see Miller v. Comm'r of Soc. Sec.,* 815 F.3d 825, 836-837 (6th Cir. 2016). (noting the weight assigned must account for the (in)consistency "among the examining sources and the record as a whole" and also consider the factors under 20 C.F.R. § 1527). Only when the ALJ does not afford great weight to a treating source's opinion is the ALJ required to apply and conduct an analysis of the factors under (c)(2)(i) and (c)(2)(ii), and (c)(3) through (c)(6). *Id.* Moreover, an ALJ is not

9

required to rely on medical opinions concluding that a person is, or is not, disabled since that is an issue reserved to the Commissioner. 20 C.F.R. § 1527(d).

"As a procedural requirement, the ALJ must also provide 'good reasons' for discounting the weight to be given to a treating source's opinion." *Edwards v. Comm'r of Soc. Sec.*, 636 Fed. Appx. 645, 649 (6th Cir. 2016) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)). These reasons must be supported by the evidence and be noted with specificity "to ensure that the rule is applied and to permit meaningful review." *Id.* (citing *Gayheart*, 710 F.3d at 376). "Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion." *Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx 172, 175-176 (6th Cir. 2009) citing *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 652 (6th Cir. 2006); *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 391-92*, Martin v. Comm'r of Soc. Sec.,* 170 Fed. Appx. 369, 372-73 (6th Cir. 2006); *Ford v. Comm'r of Soc. Sec.,* 114 Fed. Appx. 194, 197 (6th Cir. 2004).

> Dr. Ots wrote on January 31, 2014:
>
> Jay Rosewall was seen at the Newberg Clinic on January 31. He has severe stenosis at L3-L4. He has back pains and pain in his lower extremities, numbness, and significant weakness. He has no new bowel or bladder dysfunction.
>
> He is taking Motrin 800 mg 3 times a day, Valium once or twice a day, Neurontin 600mg 3 times a day, Norco up to 6 a day.
>
> He has been seen at the Pain Clinic in Marquette and had injections including radiofrequency ablation that helped him temporarily.
>
> He is planning to proceed with surgery later this summer. He has 2 new twin girls that are barely 1. He lost his insurance. His wife is retraining herself as a PA. He has applied for Social Security Disability. I would support his Social Security Disability application.

I am going to see him back in 6 months and reassess his progress.

(ECF 8-7, PageID.290). The ALJ gave three reasons for discounting Dr. Ots' statement: (1) the opinion was made on January 31, 2014, significantly after the last insured date which defined the relevant period of disability, (2) the opinion failed to identify "limitations and abilities," and (3) the decision of disability is reserved to the Commissioner. Plaintiff argues that the statement from Dr. Ots that he supported Plaintiff's application for disability is not an opinion on the issue of disability. As further evidence of his argument, Plaintiff states that the ALJ never mentioned Dr. Ots' December 2015 treatment note opining on an issue that clearly is reserved to the Commissioner. In that note, Plaintiff states that Dr. Ots, on an unsigned form, marked a box indicating that Plaintiff is "totally incapacitated at this time." (ECF No. 8-7, PageID.375).[1]

Even if the Court were to construe Dr. Ots' January 2014 statement as merely an opinion supporting plaintiff's filing of an application of disability and not as an ultimate opinion on the issue of disability, the ALJ has set forth substantial reasons to give no weight to the opinion in relation to the RFC finding. Nothing in the opinion sets forth any limitations that were not considered by the ALJ in making her RFC finding. Plaintiff has failed to identify any additional limitations that should have been included in the RFC finding. In addition, the opinion post dates the relevant period of disability and makes no statement about plaintiff's condition between November 1, 2012, and December 31, 2012. In other words, the opinion provides no insight into plaintiff's abilities and limitations during the relevant period. It was proper for the ALJ to give no weight to the January 2014 opinion. *See Shepard* v. *Comm'r of Soc. Sec.,* 505 App'x. 435, 441

---

[1] Plaintiff had recently fallen down the stairs and was in a car accident just before this assessment. (ECF No. 8-7, PageID.367). Plaintiff agrees that the December 2015 form is opinion evidence that may not be considered by the Commissioner in assessing his disability during the relevant period.

(6th Cir. 2017) (rejecting doctor's conclusory statement of disability made after the period of insured that provided only conclusory support).

The ALJ appropriately considered the medical evidence in assessing the RFC. On September 18, 2012, Plaintiff was examined by Dr. Ots who noted back back pain with limited range of back motion. Dr. Ots further noted that plaintiff was able to walk without difficulty and showed no significant weakness in his lower extremities. (ECF No. 8-7, PageID. 256). Dr Ots concluded that plaintiff would be considered for decompression surgery if his symptoms progressed with consideration of epidural steroid injections in the interim. (ECF No. 8-7, PageID.297). On November 12, 2012, plaintiff visited Dr. Christopher Mehall for a physical examination. (ECF No. 8-7, PageID.278-279). Plaintiff showed improvement since his last rhizotomy. Plaintiff was having higher lumbar pain than he had previously experienced and intermittent groin pain which occasionally shoots into his testicular region. Plaintiff was taking Lortab, Vallum, Protonix and Allegra. Upon physical examination gait was acceptable, muscle strength was 5/5 with plantar and dorsiflexion. There was minimal tenderness in the upper lumbar region, that did not appear to worsen with flexion, with possibly some mild worsening with lumbar extension, but no radiating pain. Dr. Mehall felt that the best treatment option was epidural injections.

On September 18, 2012, Radiological examination revealed L3-L4 disc space narrowing and bulging with small central extrusion, moderate facet arthritis, high-grade spinal canal narrowing, and bony bilateral neural foraminal encroachment. (ECF No. 8-7, PageID.288). The medical evidence is consistent with the ALJ's finding that plaintiff had severe impairments of disc bulging and degenerative disc disease. (ECF No. 8-2, PageID.55). The RFC took into account plaintiff's impairments and limitations.

Plaintiff argues that the ALJ failed to fully develop the record with opinion evidence. Since the ALJ rejected Dr. Ots' opinion in "support of [plaintiff's] disability application" and State agency Single Decision Maker, Jennifer Thompson's RFC opinion, plaintiff states that it was the obligation of the ALJ to develop the record to obtain opinion evidence in support of her RFC finding.

An ALJ has a "basic obligation to develop a full and fair record." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). An ALJ is never *required* to re-contact a treating physician or to order the claimant to undergo an additional consultative examination. Rather, the regulations clearly state that if there is insufficient evidence to determine if a claimant is disabled, then the ALJ "*may* recontact your treating physician . . . or other medical source. [Or] [w]e *may* ask you to undergo a consultative examination." 20 C.F.R. § 404.1520b(c)(1), (3). Here, the ALJ did not abuse her discretion by deciding that there was sufficient evidence of record upon which to make an RFC finding. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (noting the ALJ has discretion to decide whether additional medical evidence is needed and will be paid for at the government's expense). At the hearing, Plaintiff was represented by counsel. The ALJ inquired whether the record was complete. Counsel confirmed that the record was complete and that no further evidence was necessary or would be submitted. (ECF No. 8-2, PageID.71). The ALJ's RFC assessment was consistent with the medical records, including the physical examination conducted by plaintiff's treating physician Dr. Mehall, and plaintiff's testimony at the hearing.

Overall, there is substantial evidence in the record to support the ALJ's RFC finding in this case. *Foster*, 279 F.3d at 353 (noting it is Plaintiff's burden to show he is disabled). Moreover, the ALJ did not abuse her discretion by deciding that the medical record was adequate

13

to make her RFC finding. *See Rudd*, 531 Fed. App'x at 728 (quoting SSR-96-5p) (requiring that an ALJ base her RFC finding on a physician's opinion would mean that the physician would be determining whether a person is disabled rather than the Commissioner). There is substantial evidence in the record that supports the Commissioner's decision that plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and plaintiff's request for relief is DENIED.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: July 24, 2018